The State, *ex rel.* Baldwin, Attorney General, *v.* Taggart, Clerk.

10,223.

## The State, ex rel. Baldwin, Attorney General, *v.* Taggart, Clerk.

Decedents' Estates.—*Final Settlement.—Unclaimed Surplus.—Proof of Heirship or Title by Will.*—Under section 2415, R. S. 1881, where, at the final settlement of a decedent's estate, or within two years thereafter, proof of heirship or of title by will is made as to all or any portion of the surplus of such estate, and the clerk is ordered by the court to pay such surplus to the persons named and proved to be entitled thereto, the court is neither required nor authorized to direct the payment of such money into the county treasury, and no action will lie, under existing laws, to compel the clerk to pay such surplus to any persons, other than those proved to be entitled thereto, or to the clerk's successor in office.

From the Clark Circuit Court.

*J. H. Stotsenburg*, for appellant.

*J. K. Marsh*, for appellee.

Howk, J.—This was a suit by the State, on the relation of its Attorney General, against the appellee, as the clerk of the Clark Circuit Court, for the recovery of certain " money unclaimed in estates or guardianships," in the hands of appellee, as such clerk. The cause was put at issue and tried by the court, and a finding was made for the appellee, the defendant below. Over the relator's motion for a new trial the court rendered judgment in accordance with its finding.

Error is assigned here by the appellant's relator, upon the decision of the court in overruling his motion for a new trial. In this motion the following causes were assigned for such new trial:

1. The finding of the court was not sustained by sufficient evidence;

2. The finding of the court was contrary to law; and,

3. Error of law occurring at the trial and excepted to, in this, the admission of evidence to the effect that certain named persons were, at the time of the trial of this cause, residents of the city of Jeffersonville.

The appellee has not furnished this court with any brief or argument in support of the decision of the trial court, or any information, even, of the grounds of such decision.

The case is fairly presented, we think, by the evidence of the appellee, who testified as a witness, substantially as follows:

" My name is Samuel C. Taggart; I am the clerk of the Clark Circuit Court, and have been such since the 24th day of February, 1880; on that day I received from my predecessor, Plez. James, the sum of $293.32, being the surplus remaining unclaimed, since June 19th, 1877, upon the final settlement of the estate of Arabella Guyton; I also received, on the same day, from the former clerk, the sum of $8.15, being the surplus remaining unclaimed since April 3d, 1877, upon the final settlement of the estate of Francis A. Scott; I also received, on the same day, from James, my predecessor, the sum of $7.00, being the surplus remaining unclaimed since March 10th, 1877, upon the final settlement of the estate of Elizabeth F. Guyton; I also received, at the same time and in like manner, from my predecessor, the sum of $54, being the surplus remaining unclaimed since June 19th, 1877, upon the final settlement of the estate of Joseph Nicholson, deceased; I also received at the same time, in like manner, from my predecessor, the sum of $13.18, being the surplus remaining unclaimed since November 3d, 1877, upon the final settlement of the estate of Samuel Kasserman, deceased.

"All of said money is now in my hands, and no heirs have ever appeared, since the final settlement of the said estates, to claim the same or any part thereof. It has been over four years since the said estates were settled, and since the said amounts were paid into the hands of my predecessor. The final settlements were made at the dates stated in the bill of items attached to the complaint. Neither the county treasurer of Clark county nor the prosecuting attorney of this court have ever taken any steps to demand the said money, or to bring any suits for it, or to take any steps to recover it, either from me or my predecessor. Before this suit was commenced the

attorney general, Mr. Baldwin, demanded the said several sums of me, and I refused to pay him, because I am not certain whether or not he is entitled to receive them. The following order was made by the Clark Circuit Court on the 3d day of January, 1874:

"'It having been shown to the court that there are, in the hands of the clerk of this court, moneys belonging to decedents' estates which have remained unclaimed for more than two years after the final settlement of such estates, it is now ordered by the court, pursuant to section 143 of the decedents' act (2 R. S. 1852, p. 281), that all moneys in the hands of such clerk which have remained unclaimed for more than two years after the final settlement of the estates to which they belong, shall be paid over to the county treasurer of Clark county, to be by him paid over to the Treasurer of State for the benefit of the unknown heirs of such decedents, respectively.'

" The order has never been rescinded to my knowledge."

On cross-examination the appellee said: " When the final settlements of the estates above specified were made, proof was made of heirship in the several estates and parties proved to be heirs, and the court ordered the money to be paid to them, but they have never called for the money. As to the estate of Arabella Guyton, when the final settlement was made, the court ordered the surplus of $293.32 to be paid to the clerk of this court, and to be by him paid to R. B. Porter, guardian of Susan Guyton; but Porter never called for it, because he was never able to give sufficient bond. These were the facts, also, in the cases of Elijah F. Guyton and Francis A. Scott. When the Nicholson estate was settled the $54 was shown to be due to the following heirs: David R. Beatty, Mary Beatty and Joseph Beatty; and it was ordered by the court to be paid to them, but they have never called for it. When Samuel Kasserman's estate was settled, Robert Affolter, Belle Affolter and Emma Affolter were proved to be the heirs. They were minors, and the amount was never called for by them."

Over the relator's objection and exception, another witness

was allowed to testify that "the Affolter heirs reside in Jeffersonville." This was all the evidence given in the cause.

Upon the foregoing evidence, did the trial court err in finding for the appellee, the defendant below? This is the question presented for our decision. We are of opinion that this question must be answered in the negative. The order of the court of January 3d, 1874, given in evidence, was made in express terms in relation to the unclaimed moneys then in the hands of the clerk, and there is nothing in the order to indicate that it was to have a prospective operation upon such moneys as might thereafter come into the clerk's hands, and remain unclaimed. In section 143 of the act of June 17th, 1852, providing for the settlement of decedents' estates, it was provided as follows:

"Sec. 143. If, after the expiration of two years from the final settlement of an estate, no heirs appear to claim the surplus, or any part thereof, the court shall direct it to be paid over to the county treasurer, to be by him paid over to the Treasurer of State, who shall credit it upon his books to the unknown heirs of the decedent."

Under this section of the statute, if the heirs of the decedent were unknown, and none appeared, and the proper officers had been derelict in the discharge of their duties, doubtless the attorney general might have compelled by suit the party in default to pay over the surplus of the decedent's estate to the State Treasurer. Sec. 5668, R. S. 1881; *Fuhrer* v. *State, ex rel.*, 55 Ind. 150; *State, ex rel.*, v. *Denny*, 67 Ind. 148.

But we do not think that the section quoted was intended to have, or could be construed as having, any application to the case where the heirs of the decedent were known, and their heirship had been proven to the satisfaction of the court, at the time of the final settlement of the decedent's estate, and the court had ordered the surplus of the estate to be paid to them as such heirs. Such is the precise case made by the appellee's evidence quoted in this opinion. The record shows that appellant's relator commenced this action on the 4th day

of February, 1882. At that time the aforesaid section 143 had been entirely superseded by the provisions of section 2415, R. S. 1881, which section has been in force since September 19th, 1881. In this latter section it is provided as follows:

"If, at the expiration of two years from the final settlement of an estate, no proof of heirship or title by will shall have been made as to all or any portion of the surplus, the court shall direct the same to be paid to the county treasurer, to be by him paid to the treasurer of State, who shall enter the same on his books to the credit of the unknown heirs of the decedent."

It will be observed that this section of the statute differs in phraseology, if not in legal effect, from the former section. The provisions of the section last quoted, in force before and at the time of the commencement of this suit, and still in force, manifestly ought to and must control the case in hand. Under that section, where proof of heirship or title by will has been made or shown to the whole or any part of the surplus of an estate, the court is neither required nor authorized to direct the payment of such surplus or part thereof to the county treasurer. From the evidence in this case, quoted in this opinion, it will be seen that, in every instance, proof of heirship had been made to the unclaimed surplus at the time of the final settlement of the estate, and the clerk had been ordered by the court to pay such surplus to the persons named and proved to be entitled thereto. We are of opinion that neither of the sections of the statute above quoted were or are applicable to the case at bar, as made by the evidence. How long, in such a case, the surplus of an estate, or part thereof, ought to be allowed to remain unclaimed in the hands of the clerk is a question for legislative action, and not for the decision of the courts.

Our conclusion is that the court committed no error in overruling the relator's motion for a new trial.

The judgment is affirmed, with costs.